Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, and with minor modifications of Award paragraphs 2 and 4, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff is a 5'6", approximate 280 pound, 47 year-old married female who did not have an antecedent history of problems with her non-dominant left shoulder prior to the March 8, 1990 date in question and in fact had a perfect attendance record at work the preceding nine years. She is a high school graduate, but has not since received any further formal education. Following her high school graduation in 1974 plaintiff stayed home and cared for hers and others children until October of 1979 when she initially became employed by defendant Lundy Packing Company.
2. During the three years prior to the neck and left shoulder injuries giving rise hereto plaintiff had a job removing glands from hogs heads. The hogs themselves were hanging from their back legs when they passed at a rate of 1,000 per hour in front of her work station, where plaintiff stood and was not only responsible for cutting the glands out of hogs heads with a knife as well as the lips off every other hog, but responsible for cutting off any diseased heads and slinging them into a grinder behind her. On an average day she would cut off 20 to 40 diseased hogs heads weighing from 20 to 40 pounds apiece.
3. On March 8, 1990 in the process of cutting off one of these same diseased hogs heads and slinging it into the grinder behind her plaintiff sustained the admittedly compensable injury by accident giving rise to the Industrial Commission's multiple prior awards herein resulting in both disabling neck and left shoulder injuries manifested by neck, left shoulder and arm pain as well as numbness and weakness of the same extremity.
4. Plaintiff initially sought treatment for her disabling neck and left shoulder injuries at Clinton Medical Clinic where she was seen by Dr. Rouse, who provided a conservative course of treatment consisting of medication, restricted activity and physical therapy until referring her to a local orthopedic surgeon, Dr. Joseph R. Thomas, Jr., because of her continuing symptoms.
5. On April 23, 1990 plaintiff came under the care of Dr. Thomas, who similarly provided a conservative course of treatment, including a TENS unit and an injection into her injured left shoulder as well as a diagnostic arthrogram of the same shoulder, but subsequently referred her to a neurosurgeon, Dr. Samuel Ghostine, when her resulting neck and left shoulder injuries did not improve.
6. Plaintiff was treated by Dr. Ghostine and then another Fayetteville neurosurgeon, Dr. William L. Pritchard, after Dr. Ghostine temporarily left the area and with continued conservative treatment she was able to return to work for defendant-employer on or about September 29, 1990. Although plaintiff was initially assigned to a job on the cut floor inspecting hog jawls; not only was the job as physically demanding as the regular one removing glands from hogs heads, but required her to work in cold temperatures aggravating her neck and left shoulder injuries and as a result she was instead allowed to return to her regular job.
7. Despite her neck, left shoulder and arm pain and weakness and numbness in the same extremity plaintiff attempted to continue working for approximately a year; but when her condition did not improve she was ultimately forced to stop working and on November 22, 1991 to return to the Clinton Medical Clinic, where she saw the doctor on call, Dr. Nifong, who, with defendants prior authorization and approval, referred plaintiff to another neurosurgeon, Dr. David Tomaszek.
8. When Dr. Tomaszek recommended corrective surgery as the best option to provide relief of her incapacitating pain from the neck injury which he evaluated her; defendants referred plaintiff back to Dr. Ghostine, who had returned to the area. Dr. Ghostine performed a number of diagnostic studies and then referred plaintiff to Dr. Steven Powers at North Carolina Memorial Hospital in Chapel Hill for evaluation, where she was seen on March 6, 1992 and treatment was subsequently recommended at the premises Pain Clinic. Defendants, however, would not authorize the recommended Pain Clinic treatment, at which time plaintiff returned to Dr. Rouse at Clinton Medical Clinic, who referred her back to Dr. Tomaszek.
9. In June of 1992 after additional diagnostic testing and because of her failure to improve with conservative therapy Dr. Tomaszek initially attempted cervical facet and epidural blocks, which did not provide lasting relief of plaintiff's symptoms from the disabling cervical spondylosis and left-sided lateral recessed stenosis of the C5-C6 and C6-C7 levels of the lumbosacral spine due to the neck injury sustained on March 8, 1990.
10. As a result in September of 1992 Dr. Tomaszek performed corrective surgery for the same condition in the nature of left-sided laminectomies and partial medial facetectomies at both levels. Although plaintiff's arm pain improved with surgery; she continued to experience incapacitating neck and left shoulder pain.
11. By the Spring of 1993 plaintiff had reached maximum medical improvement from her neck surgery; however, she was unable to return to her regular job removing glands from hogs heads; but rather, only capable of lighter sedentary work not requiring her to lift in excess of ten pounds or to repetitively use her arms or neck or to work with her arms outstretched.
12. On April 27, 1993 because she was unable to return to her regular job removing glands from hogs heads, Dr. Tomaszek recommended that plaintiff pursue vocational rehabilitation for job placement and she was not only been willing to undergo the retraining necessary for her to obtain alternate employment; but specifically requested that defendants provide the same.
13. Defendants refused to provide the requested vocational retraining; but rather, on or about May 25, 1993 provided plaintiff with a job as a viscera counter where she was allowed to sit or stand at the viscera chute and use a hand counter in either hand to count viscera passing in front of her, which was within her overall physical limitations.
14. Although on May 25, 1993 plaintiff attempted to return to the same job; she experienced a recurrence of her incapacitating neck, left shoulder and arm pain from the involved neck and left shoulder injuries of March 8, 1990 forcing her to stop working and return to Dr. Tomaszek, who not only took her out of work altogether, but recommended her injured left shoulder be evaluated by an orthopedic surgeon specializing in shoulder problems.
15. Prior to her unsuccessful attempt to return to work as a viscera counter, defendants referred to plaintiff for evaluation to Dr. James R. Fulghum, III, another neurosurgeon, who saw her in May 14, 1993 and May 24, 1993 and not only strongly recommended that she be evaluated by a shoulder specialist because of the obvious shoulder disorder she was suffering from the March 8, 1990 injury by accident giving rise hereto; but was of the opinion that she was totally incapacitated from performing even the viscera counter's job because of her resulting neck and left shoulder pain.
16. Despite the recommendations of both Drs. Tomaszek and Fulghum defendants have never scheduled plaintiff for the needed evaluation by a shoulder specialist for the disabling left shoulder injury sustained on March 8, 1990.
17. By the time plaintiff returned to Dr. Tomaszek in March of 1994 her shoulder condition had substantially worsened such that not only was she continuing to experience incapacitating pain; but there was a dramatic loss of both active and passive mobility of the shoulder resulting in it nearly being frozen.
18. Plaintiff has not yet reached maximum medical improvement and/or the end of the healing period from and following the disabling left shoulder injury sustained on March 8, 1990; but rather, is in need of evaluation and/or treatment by an orthopedic surgeon specializing in shoulder problems, which has been recommended for more than a year both by her treating physician and the physician to whom defendants sent her for a second opinion, but has never been provided.
19. As the recommended evaluation and treatment by a shoulder specialist is reasonably designed to tend to effect a cure of, provide needed relief of and/or lessen the period of disability associated with the disabling left shoulder injury plaintiff sustained on March 8, 1990, defendants are obligated to provide it.
20. Plaintiff remains totally incapacitated by the neck and left shoulder injuries sustained on March 8, 1990 and has since June 14, 1993.
21. This matter was defended without reasonable ground based on stubborn, unfounded litigiousness because the medical and lay evidence is undisputed that plaintiff has remained totally disabled as a result of the injury by accident giving rise hereto since June 14, 1993, that the same accident resulted in both disabling neck and left shoulder injuries and that she is in need of evaluation and/or treatment of her disabling left shoulder injury by an orthopedic surgeon specializing in shoulder problems. Both her treating physician and the neurosurgeon to whom defendant-carrier sent her for a second opinion recommended that plaintiff be evaluated by a shoulder specialist, are of the opinion that plaintiff is even unable to return to the viscera counter's job because of her incapacitating pain and more than a year has elapsed since the same recommendations and not only does plaintiff still remain unable to return to work, but her shoulder condition has worsened, yet defendants have neither scheduled the needed examination nor resumed weekly compensation benefits.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. As a result of the March 8, 1990 injury by accident giving rise hereto plaintiff sustained disabling injuries to her back and left shoulder and has remained totally disabled by the same injuries since June 14, 1993 entitling her to compensation at a rate of $311.33 per week from June 14, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled.
2. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the evaluation and/or treatment she requires by an orthopedic surgeon specializing in shoulder problems.
3. For the reasons stated in the above Findings of Fact this matter was defended without reasonable ground based on stubborn, unfounded litigiousness entitling plaintiff to an award of attorney fees pursuant to the provisions of G.S. § 97-88.1.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of her continuing temporary-total disability, compensation at a rate of $311.33 per week from June 14, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as she remains totally disabled. Such compensation as has accrued under the same award shall be paid in lump sum.
2. Based on his time involved in prosecuting this claim a reasonable attorney fee in the amount of $9,000.00 is hereby approved for plaintiff's counsel, which defendants shall pay as part of the costs pursuant to the provisions of G.S. § 97-88.1. Any further fee due plaintiff's counsel is deferred until there is a final award after his client undergoes evaluation and/or treatment by a shoulder specialist.
3. Defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including as part thereof the evaluation and/or treatment plaintiff requires by an orthopedic surgeon specializing in shoulder problems, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
4. Defendants shall bear the costs, including as part thereof not only the expert witness fees previously awarded Drs. Tomaszek and Fulghum; but a $9,000.00 attorney fee payable to plaintiff's counsel pursuant to the provisions of G.S. § 97-88.1
because this matter was defended without reasonable ground based on stubborn, unfounded litigiousness.
* * * * * * * * * * *
ORDER
Defendants filed a Form 24 Application to Terminate, Suspend or Modify Payments of Compensation on November 18, 1994, and plaintiff responded on November 29, 1994. Based on the evidence presented by the parties in this matter, the full Commission hereby DENIES defendants' request to terminate payment of compensation benefits to plaintiff.
 S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________________ JAMES J. BOOKER COMMISSIONER
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CMV/CNP/tmd